## In re NORTH AMERICAN INVESTMENTS CO. and North American Trading Co., Bankrupt.

### No. 87 C 7550.

United States District Court, N.D. Illinois, E.D.

Sept. 3, 1987.

Gerald P. Grace, Avrum Dannen, Mark Greenhouse, Allan Cohen, Chicago, Ill., for plaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This case has been assigned here under Local Bankruptcy Rule 5.13B (applicable to bankruptcy filings antedating the Bankruptcy Code of 1978), calling for review of the fees recently allowed by Bankruptcy Judge Frederick Hertz. This Court has reviewed the entire file, including Judge Hertz's final report of August 25, 1987, the underlying Final Reports and Accounts by Gerald Grace ("Grace") as both Receiver and Trustee, and the applications for fees by the attorneys for the Receiver, the Trustee and the petitioning creditors.

At first blush, Judge Hertz's recommendations might appear troublesome—net estate proceeds of just $44,521.65, nearly 73% of which are swallowed up by costs of administration (including the currently recommended fees and costs aggregating $23,-137.80.) Nothing at all remains for even a nominal dividend payable to the nearly $2 million in general creditors' claims. But any such concerns as to the inappropriateness of the awards are unfounded for several reasons, including these:

1. Initially North American Investments Co. ("Investments") made an assignment for benefit of creditors, but when an involuntary bankruptcy petition was filed against the company, Grace was appointed as Receiver, then later Trustee. In the latter capacity he brought an involuntary petition against North American Co. ("Trading"). Because Investments and Trading had joint

management and operations and because they engaged in the same dubious business (the alleged buying of silver futures for investors) from the same premises with the same telephones and personnel, the cases were consolidated for joint administration.

2. Though Judge Hertz did not use the term, the Investments and Trading business operations (if they may be so characterized) appeared to have had all the characteristics of the classic "boiler room" operation involving the sale of dubious securities. Judge Hertz does speak of the business as "in the nature of a 'Ponzi scheme'" and perhaps as "a laundry for illicit cash." In any case, the checkered history of the lengthy bankruptcy proceedings and the reasons for the fee allowance are best summarized in pages 2 and 3 of Judge Hertz's attached August 21 report.

3. Despite the scanty assets ultimately realized by the estates (scanty in relation to the millions in unsecured claims from public investors), counsel necessarily had to expend major blocks of time:

(a) as Receiver's attorney, Avrum Dannen ("Dannen") spent 25½ hours;

(b) as Trustee's attorney, Dannen spent 353 hours (including the successful defense of an appeal to the Seventh Circuit and the unfortunately unsuccessful conclusion of litigation against the debtors' principal, Luigi DiFonzo);

(c) as counsel for the petitioning creditors, Mark Greenhouse (Greenhouse) spent 23½ hours.

 Though Judge Hertz allowed Dannen's $3,040 request in the capacity of attorney for the Receiver in full, as well as allowing the modest requests by the Receiver and the Trustee and a $2,140 fee for Greenhouse (amounting to $90 an hour), Dannen's claim as the Trustee's attorney was necessarily reduced from some $42,000 to $16,524.74 (because that amount exhausted all the available proceeds). For all his services in both capacities, Dannen is being compensated at a bargain-basement hourly rate of less than $52.[1]

In sum, this Court finds Judge Hertz's analysis and recommendations entirely reasonable. Accordingly the Clerk is notified this Court will not withdraw jurisdiction to review or hold hearings on the applications for fees.

## ATTACHMENT

### 74 B 122

### 74 B 3976

IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

August 21, 1987.

The undersigned has reviewed the file and applications for compensation for Gerald P. Grace, as receiver and as trustee together with Avrum H. Dannen, attorney for receiver and attorney for the trustee, and that of Mark A. Greenhouse, special counsel for the estate. It was noted that claims of general creditors totaling $1,963,-411.45 were allowed.

The case began as an assignment for the benefit of creditors and Gerald P. Grace was appointed following an involuntary petition in bankruptcy, as receiver for North American Investments Co. Subsequently, he was appointed as trustee and commenced an involuntary petition as against North American Trading Co. These cases were originally assigned to the Honorable Elmer P. Schaefer, now deceased. The cases were consolidated for joint administration and subsequently assigned to the undersigned. The administration of these proceedings involve the same principals and the same business as allegedly purchasing silver futures for investors. The investigation of this cause centered around Luigi DiFonzo, who was president, director and major shareholder of each of the corporations as well as chief executive officer. Both corporations operated from the same

---

1. In addition to his finally being paid at that low hourly rate, Dannen has had to wait several years for payment. That is true of Greenhouse as well, so that his nominal $90 hourly rate is also a good deal less than that in real economic value.

premises with the same telephones and the same personnel. Each of the debtors obtained money from investors through high-pressure sales people, with minimum investments of $2,000, for purchasing silver futures. During the course of the investigation it appeared that these businesses came to be operated in the nature of a "Ponzi scheme"; they may also have been operated as a laundry for illicit cash.

DiFonzo was called to give testimony at the first meeting of creditors. He refused to appear claiming that his right to immunity under the Fifth Amendment would be violated. The trustee's counsel contended that the provision of the Bankruptcy Act provided that the responsible officer had immunity from testimony given at a meeting of creditors. This matter was briefed and argued before the bankruptcy court, the district court and the United States Court of Appeals for the Seventh Circuit, with a ruling in favor of the trustee. Thereafter, Mr. DiFonzo appeared and submitted to examination and once again asserted his Fifth Amendment privilege. The court certified Mr. DiFonzo for contempt, which matter was assigned to Judge Marshall, whereupon DiFonzo did answer the questions, resulting in an order purging him of contempt and he was released from custody of the United States Marshal.

Thereafter the trustee instituted civil litigation against DiFonzo and his wife which matter was assigned to Judge McMillan. Because the necessary witnesses could not be found for depositional discovery, the plaintiff failed to prove a prima facie case and the cause was dismissed by Judge McMillan.

In addition to these legal services, counsel liquidated the physical assets of the debtors including a Certificate of Deposit found in a safety deposit box at Continental Bank, filed objections to claims and did all things necessary in order to administer assets in this estate.

The estate remained open for a number of years thereafter and when it appeared that Luigi DiFonzo had died, no useful purpose remained.

The receiver, Gerald P. Grace, requested and was allowed the sum of $585.22. As trustee, he requested and was allowed the sum of $860.22. Avrum H. Dannen as attorney for receiver, spent 25½ hours for which he requested the sum of $3,040.62, being an average hourly cost of $119 per hour. He was allowed the sum of $3,040.62. The attorney for the trustee, Avrum H. Dannen, rendered 353 hours of service for which he requested the sum of $42,090.63. Because of the comparatively small size of the estate and the long years of service, Mr. Dannen was allowed the sum of $16,524.74. Mark A. Greenhouse, as special counsel, rendered 23½ hours for which he asked for the sum of $2,300 and was allowed $2,140 together with the sum of $55 reimbursement of costs.

Accordingly this bizarre and sordid case ultimately reached its final conclusion with only the ultimate retribution being available to nearly $2 million to unsecured creditors.

Respectfully submitted,

/s/ Frederick J. Hertz
FREDERICK J. HERTZ
U.S. Bankruptcy Judge

